UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————————

EMERALD EQUIPMENT LEASING, INC.,

                          Plaintiff,

          - against -

SEA STAR LINE, LLC,

                          DEFENDANT.
———————————————————————————————

08 Civ. 10672 (JGK)

MEMORANDUM OPINION AND
ORDER


JOHN G. KOELTL, District Judge:

     This is an application by the plaintiff, Emerald Equipment

Leasing, Inc. ("Emerald") for a maritime attachment in order to

obtain security for a possible judgment on a counterclaim

against the defendant, Sea Star Line, LLC ("Sea Star"), in a

litigation pending in Delaware.  The defendant opposes the

attachment and requests that the Court dismiss the action.


                              I

     The following facts and procedural history are taken from

the Amended Verified Complaint.

     The plaintiff is a Delaware corporation with its principal

place of business in Pennsylvania, and the defendant is a

Delaware corporation with its principal place of business in

Florida.  In September 2002, the parties entered into an

Equipment Rental Agreement (the "Agreement"), whereby Sea Star

agreed to rent certain equipment from Emerald in connection with the carriage of cargo in maritime commerce.   Emerald terminated the Agreement on October 31, 2003 because Sea Star allegedly underpaid Emerald for the rental equipment.   Sea Star subsequently filed an action against Emerald in the District Court for the Middle District of Florida seeking, among other things, a declaratory judgment of the parties' rights and liabilities under the Agreement.   Upon Emerald's motion, the action was transferred to the District Court for the District of Delaware.   Emerald filed an Amended Counterclaim in the Delaware litigation seeking damages in excess of $4.0 million for breach of the Agreement.   That counterclaim is still pending, although the Delaware court has already denied Sea Star's requested declarations.   (Am. Verified Compl. ¶¶ 2-11.)   Emerald brought this action seeking an Order of Maritime Attachment and Garnishment in the amount of $6,741,760 pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims in order to obtain security for any judgment that may be obtained on the counterclaim pending in the Delaware litigation. (Am. Verified Compl. ¶¶ 12, 14.)

II

In order to obtain an attachment, apart from satisfying the filing and service requirements of Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims, a plaintiff bears the burden of showing that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006); Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 278 (S.D.N.Y. 2006). The Court must vacate an attachment if the plaintiff fails to sustain its burden of demonstrating that the requirements of Rules B and E are satisfied.  Aqua Stoli, 460 F.3d at 445.  In determining whether the plaintiff has met this burden, a district court may consider evidence outside of the pleadings. SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06 Civ. 15375, 2008 WL 4900770, at *1 (S.D.N.Y. Sept. 10, 2008) (citing Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 53 (2d Cir. 2008); Transfield ER Cape Ltd. v. STX Pan Ocean Co. Ltd., No. 09 Civ. 1250, 2009 WL 691273, at *1 (S.D.N.Y. Mar. 17, 2009); Wajilam Exports, 475 F. Supp. 2d at 278-79.

A district court may also vacate a Rule B attachment on "equitable" grounds in certain limited circumstances. <u>Aqua Stoli</u>, 460 F.3d at 445 & n.5. Specifically, "a district court may vacate the attachment if the defendant shows at the Rule E hearing that: 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain <u>in personam</u> jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." <u>Id.</u>; <u>see also</u> <u>Rice Co. v. Express Sea Transport Corp.</u>, No. 07 Civ. 7077, 2007 WL 4142774, at *2 (S.D.N.Y. Nov. 15, 2007). The defendant bears the burden of demonstrating equitable grounds for vacatur. See <u>Aqua Stoli</u>, 460 F.3d at 445 n.5; <u>Rice Co.</u>, 2007 WL 4142774, at *2.


III

The plaintiff argues that an attachment should issue automatically because it has demonstrated the four factors enumerated in <u>Aqua Stoli</u> for obtaining a Rule B attachment. The defendant opposes the attachment based on two of the equitable grounds delineated in <u>Aqua Stoli</u>: namely, that the defendant is subject to suit in a convenient adjacent jurisdiction (New Jersey) and that the plaintiff could obtain <u>in personam</u>

4

jurisdiction over the defendant in the district where the plaintiff is located (Delaware).

A

The defendant argues that no attachment should issue because it is subject to suit in New Jersey, a convenient adjacent district.  Although the plaintiff does not concede the point, it is plain that New Jersey is sufficiently close to this forum to constitute a convenient adjacent jurisdiction under Aqua Stoli, should the defendant be subject to suit there.  See Cantone & Co., Inc. v. Seafrigo, No. 07 Civ. 6602, 2009 WL 210682, at *6 (S.D.N.Y. Jan. 27, 2009) ("[T]he District of New Jersey fits the Second Circuit's description of a convenient adjacent jurisdiction"); Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V., 543 F. Supp. 2d 338, 340 (S.D.N.Y. 2008) (finding that District of New Jersey is convenient adjacent jurisdiction); Swiss Marine Services S.A. v. Louis Dreyfus Energy Services L.P., 598 F. Supp. 2d 414, 419 (S.D.N.Y. 2008) (finding that District of Connecticut is convenient adjacent jurisdiction).  But see First Am. Bulk Carrier Corp. v. Van Ommeren Shipping LLC, 540 F. Supp. 2d 483, 485 (S.D.N.Y. 2008) ("[T]he 'adjacent district' is generally viewed as one of another federal court within the same state . . . not one in a different state, even if the two states are adjacent.").  The

plaintiff offers no argument or explanation with respect to why
the District of New Jersey would be inconvenient in this case in
terms of geographical location.  Nothing in the <u>Aqua Stoli</u>
opinion requires that a convenient adjacent jurisdiction be
located in the same state and the Courthouse in New Jersey would
be convenient for litigants who would otherwise litigate in this
Courthouse.  Therefore, the District of New Jersey is
sufficiently close to this forum to constitute a convenient
adjacent jurisdiction should the defendant be subject to suit
there.

Whether the defendant is subject to suit in New Jersey
depends upon a two pronged inquiry: first, whether the defendant
can be found in the district in terms of jurisdiction, and
second, whether the defendant can be found in the district for
service of process.  These are two separate inquiries.  <u>Seawind
Compania, S.A. v. Crescent Line, Inc.</u>, 320 F.2d 580, 582 (2d
Cir. 1963); <u>see</u> <u>Ivan Visin Shipping Ltd. v. Onego Shipping &
Chartering B.V.</u>, No. 08 Civ. 1239, 2008 WL 839714, at *1
(S.D.N.Y. Mar. 31, 2008); <u>see also, e.g.,</u> <u>Cantone</u>, 2009 WL
210682, at *3; <u>Swiss Marine</u>, 598 F. Supp. 2d at 416.

"With regard to the jurisdictional prong, a non-resident or
foreign defendant is subject to personal jurisdiction in a
district where there exist 'minimum contacts' between defendant
and the forum state, such that the exercise of jurisdiction over

6

the defendant does not violate 'traditional notions of fair play and substantial justice.'" <u>Cantone</u>, 2009 WL 210682, at *3 (quoting <u>Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement</u>, 326 U.S. 310, 316 (1945)).[1] "A non-resident corporation may be subject to jurisdiction, on a general or specific basis, depending on the contacts and actions of its agents." <u>Ivan Visin</u>, 2008 WL 839714, at *2 (internal quotation marks and alterations omitted).  General jurisdiction exists where a defendant maintains "continuous and systematic general business contacts" with a district.  <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 568 (2d Cir. 1996) (internal quotation marks omitted).  Specific jurisdiction exists where an action "aris[es] out of or relate[s] to the defendant's contacts with the forum." <u>Id.</u>

In this case, the defendant has demonstrated that it is subject to general jurisdiction in New Jersey.  The defendant maintains continuous and systematic business contacts with New Jersey.  The defendant opened an office in New Jersey in May 2002 which has been open continuously since that time.  The defendant maintains employees in that office who coordinate loading activities of roughly 100 loads per week and also handle

---

[1]     The "minimum contacts" standard developed under the Due Process Clause is the only standard that need be applied in this case, because the New Jersey long-arm statute confers jurisdiction "as far as is constitutionally permissible," <u>DeJames v. Magnificence Carriers, Inc.</u>, 654 F.2d 280, 284 (3d Cir. 1981), rendering a separate jurisdictional analysis under that statute redundant.  <u>See Ivan Visin</u>, 2008 WL 839714, at *2 n.1.

paperwork for the loads, report weekly on cargo volume, and
review local charges.  The work done in the New Jersey office is
associated with annual revenues of approximately $10 million for
the defendant.  The defendant has filed tax returns with the
State of New Jersey and paid taxes to that state.  (Affidavit of
Steven Hastings ("Hastings Aff.") ¶¶ 3-4.)  These contacts are
plainly continuous and systematic and indeed the plaintiff does
not suggest otherwise.  Therefore, the defendant is subject to
general jurisdiction in New Jersey and is thus "found" in that
district for jurisdictional purposes.

     The defendant is also "found" in New Jersey for purposes of
service of process.  Federal Rule of Civil Procedure 4(h)
provides, in relevant part, that a corporation must be served
"by delivering a copy of the summons and of the complaint to an
officer, a managing or general agent, or any other agent
authorized by appointment or by law to receive service of
process . . . ."  Fed. R. Civ. P. 4(h).  See also, e.g., Ivan
Visin, 2008 WL 839714, at *3.  The defendant has provided
evidence by means of a sworn affidavit that the most senior
employee in its New Jersey office, Shawne Burke, has a
managerial role in that office and would know by virtue of his
job responsibilities to transmit notice of the commencement of a
legal action to one of the company's officers.  (Hastings Aff. ¶
5.)  It is therefore apparent that the plaintiff could have

served process on the defendant in New Jersey by delivering the summons and complaint to Mr. Burke.  See, e.g., Jiao v. First Int'l Travel, Inc., No. 03 Civ. 0165, 2004 WL 1737715, at *4 (S.D.N.Y. Aug. 4, 2004) (observing that "[t]he well-established definition of a managing or general agent is some person invested by the corporation with general powers involving the exercise of judgment and discretion," and holding that a part-time receptionist and salesperson was not a managing or general agent) (internal quotation marks omitted); Car-Freshner Corp. v. Broadway Mfg. Co., 337 F. Supp. 618, 620 (S.D.N.Y. 1971) (finding service on shop foreman sufficient for service of process); Arpad Szabo v. Smedvig Tankrederi A.S. The Old Bull, 95 F. Supp. 519, 522 (S.D.N.Y. 1951) ("Service upon the agent whose activities establish defendant's presence [in the district] is sufficient notice of the suit."); see also 4A C. Wright & A. Miller, Federal Practice and Procedure § 1103, p. 573 (3d ed. 2002) ("[E]ven a person who is not in charge of the corporation's activities within the state still may qualify as a managing or general agent for purposes of Rule 4(h)(1) if the individual is in a position of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors.").

9

The plaintiff argues that whether the defendant is subject to personal jurisdiction and service of process in New Jersey is of little moment, because the "first filed rule" would prevent the plaintiff from suing the defendant in New Jersey.  According to the plaintiff, the first filed rule provides that "a defendant cannot be the subject of a second suit when there was a 'first-filed suit' involving the same parties and the same issues in a different federal court, except in very limited circumstances . . . ."  (Deft.'s Jan 22, 2009 Letter Br. 3.) The plaintiff argues that, under that "rule," the pending litigation between the parties in Delaware would block the plaintiff from suing the defendant over the same issues in New Jersey.

However, the first filed rule is merely a "presumption in favor of allowing the controversy to be adjudicated in the forum where it was first filed." First City Nat. Bank and Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989) (internal quotation marks omitted).  "District courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first filed rule." Equal Employment Opportunity Comm'n v. Univ. of Penn., 850 F.2d 969, 972 (3d Cir. 1988) (collecting cases).  Therefore, the first filed rule is a matter of discretion for the district court and would not prevent the plaintiff from suing the defendant in New Jersey.

This case is thus not analogous to Stolt Tankers v. Geonet
Ethanol LLC, 591 F. Supp. 2d 612 (S.D.N.Y. 2008), in which the
court declined to consider equitable vacatur based on the
presence of both parties in another district because a mandatory
arbitration clause would necessarily have prevented the
plaintiff from suing the defendant in that district.  See id. at
619.

     In any event, the plaintiff's ability to pursue a suit on
the merits against the defendant in New Jersey is beyond the
scope of the convenient adjacent jurisdiction inquiry
contemplated by Aqua Stoli.  That inquiry is limited to whether
the defendant is subject to personal jurisdiction, including
service of process, in an adjacent district that is
geographically convenient.  See Swiss Marine, 598 F. Supp. 2d at
420-21 (addressing question of "whether in order to be
convenient, an adjacent district must be one in which the
defendant is subject to an immediate suit on the merits," and
concluding that there is no such requirement).  But see Stolt
Tankers, 591 F. Supp. 2d at 619.  Courts have repeatedly
described the convenient adjacent jurisdiction inquiry in
strictly jurisdictional terms, without any mention of whether
bringing a suit on the merits is actually plausible.  See, e.g.,
Cantone, 2009 WL 210682, at *3; Ivan Visin, 2008 WL 839714, at
*1.  Judge Sand has explained that the limited nature of the

11

inquiry comports with the purposes of Rule B, because "the
ability of the court to exercise <u>in personam</u> jurisdiction over
the defendant satisfies the plaintiff's need for assurance that
it will be able to call the defendant into court to satisfy a
judgment." <u>Swiss Marine</u>, 598 F. Supp. 2d at 421.  Put another
way, it follows from the limited purposes of Rule B - obtaining
jurisdiction over the defendant through its property and
obtaining security for the plaintiff's potential recovery - that
"the availability of an immediate suit on the merits is not the
lynchpin in evaluating attachment and vacatur." <u>Id.</u> at 421 n.8;
<u>see also</u> <u>Seawind Compania</u>, 320 F.2d at 581-82 ("[A maritime
attachment] has a dual purpose: (1) to obtain jurisdiction of
the respondent in personam through his property, and (2) to
assure satisfaction of any decree in libelant's favor.").

    For the foregoing reasons, the defendant has demonstrated a
basis for equitable vacatur pursuant to <u>Aqua Stoli</u> on the
grounds that it is subject to suit in a convenient adjacent
jurisdiction.


                                  B

    The defendant also argues that no attachment should issue
because the plaintiff could obtain <u>in personam</u> jurisdiction over
the defendant in the district where the plaintiff is located.
In <u>Aqua Stoli</u>, the Court of Appeals instructed that "[a]

                                 12

maritime attachment would . . . be properly vacated if the
plaintiff and defendant are both present in the same district
and would be subject to jurisdiction there, but the plaintiff
goes to another district to attach the defendant's assets."
Aqua Stoli, 460 F.3d at 444-45.  That is exactly what the
plaintiff has done here.  There can be no disputing that the
parties in this case are both present in the same district and
subject to jurisdiction there, because both parties are
incorporated in Delaware and are currently involved in
litigation that is ongoing in that district.  Indeed, the
plaintiff concedes that "Sea Star may be said to 'reside' in
Delaware.'"  (Pl.'s Feb. 19, 2009 Letter Br. 4.)  The plaintiff
could thus obtain a personal judgment against the defendant in
Delaware if such a judgment were warranted, and pursue judgment
execution remedies against the defendant.

     The plaintiff argues that an attachment of the defendant's
assets may not be available in Delaware, and therefore it needs
to obtain an attachment in this district in order to achieve
security.  That argument is unavailing because the twin purposes
of procuring Rule B attachments - obtaining jurisdiction over
the defendant through its property and obtaining security for
the plaintiff's potential recovery - cannot be separated.  See
STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte
Ltd., 560 F.3d 127, 130 (2d Cir. 2009).  The plaintiff's

arguments to the contrary, "security cannot be obtained except as an adjunct to obtaining jurisdiction." Seawind, 320 F.2d at 582. Therefore, the plaintiff may not obtain an attachment in this district purely for the purpose of securing its claim in Delaware.[2]

For these reasons, the defendant has demonstrated a basis for equitable vacatur pursuant to Aqua Stoli on the grounds that the plaintiff could obtain jurisdiction over the defendant in a district where the plaintiff is located.

C

The plaintiff argues that even if equitable vacatur is warranted in this case, an attachment should issue automatically at this stage because the plaintiff has satisfied the factors enumerated in Aqua Stoli warranting an attachment. The plaintiff argues that the defendant cannot properly make the arguments it raises in opposing the attachment until the

---

[2]     The cases cited by the plaintiff to support this practice do not support it. See Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d Cir. 2008) (upholding district court's refusal to vacate Rule B attachment on equitable grounds where defendants "have not demonstrated that they are subject to personal jurisdiction in the districts where the Plaintiffs are located . . . ."); Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 122 (S.D.N.Y. 1979) ("No matter how convincingly demonstrated the plaintiff's need for security, it will not authorize attachment against a defendant who is present in the district . . . ."); Seatrek Trans PTE Ltd. v. Regalindo Res. PTE Ltd., No. 08 Civ. 551, 2008 U.S. Dist. LEXIS 30578, at *6-7 (S.D.N.Y. Mar. 26, 2008) (declining to dismiss maritime attachment proceeding for forum non conveniens where merits of the dispute would be resolved through arbitration in Singapore).

attachment has issued and the defendant moves to vacate it at a subsequent proceeding under Supplemental Rule E(4)(f).

That argument is without merit.  Rule B is an <u>ex parte</u> mechanism in part because a condition is that the defendant not be found in the district and the defendant would typically not appear until after an attachment has been issued, and perhaps only after property has been attached in the District. Moreover, maritime attachments arose because it is often difficult to find assets of parties to a maritime dispute. "Maritime parties are peripatetic, and their assets are often transitory."  <u>Aqua Stoli</u>, 460 F.3d at 443.  In this case, the defendant has appeared to contest the attachment before it has issued, and there is no suggestion that an immediate attachment is necessary to freeze assets.  Having appeared, the defendant is entitled to make arguments as to why the attachment should not issue.  The defendant has shown that two of the factors supporting equitable vacatur under <u>Aqua Stoli</u> are present in this case and that the attachment sought by the plaintiff, even if granted, should be vacated on equitable grounds.  The plaintiff essentially asks the Court to ignore the reality of this case and proceed with the empty formalism of issuing an attachment that will subsequently be vacated.  Granting the attachment now only to vacate it later would serve no purpose.

The plaintiff has referred the Court to no case precluding it from considering the defendant's arguments in opposition to the attachment.  The plaintiff points out that Supplemental Rule E(4)(f) provides for a vacatur hearing following an attachment.  But the purpose of such a hearing is to provide the defendant with an opportunity to contest the attachment.  See Aqua Stoli, 460 F.3d at 438; see also Supp. Rule E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing . . . .").  Plainly the provision of the hearing is intended to protect the defendant and ensure that the defendant is able to make arguments opposing the attachment.  In this case, the defendant has already appeared and made these arguments and does not need a further hearing to do so.  To issue the attachment and force the defendant to delay making its arguments until a post-attachment hearing would turn the hearing into a protective measure for the plaintiff, a purpose for which it was not intended.


CONCLUSION

For all of the foregoing reasons, the petitioner's application for a Rule B attachment is **denied**.  Because absent an attachment there is no further basis for this lawsuit, this

case is **dismissed.**   The Clerk is directed to enter Judgment and
to close this case on the Docket.

**SO ORDERED.**

**Dated:**     **New York, New York**
           **May 1, 2009**

                                    John G. Koeltl
                              United States District Judge